IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE DE ANGELIS, : | |
| : | |
| Plaintiff, : | |
| : | Case No. 2:17-cv-926 |
| v. : | |
| : | JUDGE ALGENON L. MARBLEY |
| NOLAN ENTERPRISES, INC., : | |
| : | Magistrate Judge Deavers |
| Defendant. : | |

## OPINION & ORDER

This matter is before the Court on Defendant Nolan Enterprises, Inc., d/b/a Centerfold Club ("Centerfold")'s Motion to Dismiss or to Stay and Motion to Compel Arbitration. (ECF No. 15). For the reasons stated below, Centerfold's Motion is **DENIED**.

### I.  BACKGROUND

Centerfold is an adult entertainment club in Columbus, Ohio. (ECF No. 1 at ¶ 3). Plaintiff, Ms. Stephanie De Angelis, alleges that she worked at Centerfold as a dancer from April 2016 to February 2017. (*Id.* at ¶¶ 16, 18). Ms. De Angelis alleges that Centerfold did not pay its dancers any wages. (*Id.* at ¶ 1). Instead, she avers that Centerfold misclassified all of its dancers as independent contractors, rather than employees, and that the dancers are only compensated through tips from customers. (*Id.* at ¶¶ 17, 21). She further alleges that at the end of each night, Centerfold took a cut from all tips made by the dancers, and the dancers were required to divide their tips with other employees. (*Id.* at ¶¶ 5, 30).

On June 14, 2016, Ms. De Angelis filled out a document purporting to be an application to lease space at Centerfold. (ECF No. 44 at 1-4). Two days later, on June 16, 2018, Ms. De Angelis signed a two-part agreement (the "Agreement"): Part 1 is titled "Preliminary Lease Information

1

Agreement to Lease Space as an Entertainer Tenant and Not to Be an Employee," and Part 2 is titled "Entertainer Tenant Space Lease Agreement." (ECF No. 44 at 6-7). Part 1 states in relevant part:

> During the time I lease Space here, should there be any disputes or issues, I agree to resolve or litigate them individually with the club and settle with binding arbitration without seeking class treatment or consolidate my issues with others. This paragraph (12) survives termination of my space lease.

(*Id.* at 6, ¶ 12). Part 2 contains a provision entitled "Arbitration/Waiver of Class and Collective Actions/Attorney Fees and Costs," which reads in relevant part:

> Binding Arbitration. Any and all claims and/or controversies between the **Entertainer Tenant** and the **Club** (and any other persons or entities associated the Club [sic], including but not limited to related corporations, parent corporations, subsidiaries, affiliates, officers, directors, shareholders, members, managers, employees, and/or agents), including any and all claims that arise from conduct that predates this Agreement or which arises hereafter, and regardless of whether such claims sound in statute, a local regulation or arise from any other source, (except for an administrative charge before an administrative agency) shall be exclusively decided by binding arbitration held pursuant to and in accordance with the Federal Arbitration Act ("FAA") and shall be decided by a single neutral arbitrator agreed upon by the parties, who shall be permitted to award, subject only to the restrictions contained in this Paragraph 19 and in accordance with the severability provisions of Paragraph 19, any relief available in a court. **All parties waive any right to litigate such controversies, disputes, or claims in a court of law, and waive the right to trial by jury.**

(*Id.* at 13 ¶ 19 A.) (emphasis in original). The agreement further provides that, "[t]he arbitrator shall have the exclusive authority to resolve any and all disputes over the validity of any part of this agreement and any award by the arbitrator may be entered as a judgment in any court having jurisdiction." (the "Delegation Provision") (*Id.* at 14).

Finally, the Agreement contains the following relevant language at the end of Part 2:

> THE CLUB RESERVES THE RIGHT TO MODIFY, DELETE, OR ADD TO ANY OF THE CONDITIONS CONTAINED HEREIN WITHOUT NOTICE, AND RESERVES THE RIGHT TO CANCEL ENTERTAINER TENANT SPACE LEASE AT ANY TIME, WITH OR WITHOUT NOTICE OR CAUSE UPON BREACH OF THIS SPACE LEASE AGREEMENT OR SPACE LEASE USAGE TERMS.

(the "Amendment Provision") (ECF No. 44 at 15).

Ms. De Angelis filed this lawsuit as a collective and class action against Centerfold on October 23, 2017, alleging violations of the Fair Labor Standards Act of 1983 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act ("OMFSWA"), O.R.C. §§ 4111.01, *et seq.*, and the Ohio Semi-Monthly Payment Act, O.R.C. § 4113.15, as well as common law unjust enrichment by failing to pay dancers minimum wage for all hours worked, including failure to pay overtime. (ECF No. 1). On January 22, 2018, Centerfold filed the Motion to Dismiss or Stay and Motion to Compel Arbitration (ECF No. 15). The Motion is fully briefed and ripe for review.

## II.  LAW AND ANALYSIS

Under the Federal Arbitration Act ("FAA"), arbitration contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party who signed an arbitration contract fails or refuses to arbitrate, the aggrieved party may petition the court for an order directing the parties to proceed in arbitration in accordance with the terms of an arbitration agreement. 9 U.S.C. § 4. The Court must then "determine whether the parties agreed to arbitrate the dispute at issue." *Ackison Surveying, LLC v. Focus Fiber Sols., LLC*, No. 2:15-CV-02044, 2016 WL 4208145, at *1 (S.D. Ohio Aug. 10, 2016) (citing *Stout v. J.D. Byrider*, 228 F.3d 09, 714 (6th Cir. 2000)). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* at *1. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in light most favorable to the non-moving party." *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014). The court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider

3

whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

In determining whether the parties agreed to arbitrate under the first prong of the *Stout* test, the Court must apply state law of contract formation. *Prachun v. CBIZ Benefits & Ins. Servs., Inc.*, No. 2:14-CV-2251, 2015 WL 5162522, at *3 (S.D. Ohio Sept. 3, 2015); *see also Ackison Surveying, LLC v. Focus Fiber Sols., LLC*, No. 2:15-CV-02044, 2016 WL 4208145, at *1 (S.D. Ohio Aug. 10, 2016) (Marbley, J.) ("Whether the parties' contract evinces an agreement to arbitrate is governed by principles of state contract law."). Thus, "state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). The parties agree that Ohio law applies to this action. (*See* ECF No. 45 at 5; ECF No. 47 at 10).

Centerfold argues that the Agreement is a valid agreement to arbitrate, satisfying the first element of the *Stout* test. (ECF No. 15 at 9). Further, Centerfold argues that the threshold question of validity must be resolved by the arbitrator, pursuant to the Agreement's Delegation Provision. (ECF No. 15 at 10). In response, Ms. De Angelis contends that Centerfold does not specifically identify any delegation clause.[1] (ECF No. 45 at 13). That is plainly false. (*See* ECF No. 15 at 7) ("[C]lause 19 provides an unequivocal 'delegation provision', that states: 'the arbitrator shall

---

[1] Ms. De Angelis makes two initial arguments in its Response in Opposition that are unpersuasive. First, she argues that the Court cannot dismiss Centerfold in this action because they are jointly and severally liable for the actions of co-conspirators in *Doe 1, et al. v. VM2015 Inc., et al.*, Case No. 2:18-cv-443 (S.D. Ohio 2018). The Court is aware of no doctrine that would permit the Court to consider Centerfold's role in a different case in determining whether Ms. De Angelis is bound by an arbitration agreement in this matter, where the alleged co-conspirators are not parties. Ms. De Angelis cites no law to support her argument, and the Court rejects it outright. Second, Ms. De Angelis argues that the Court should grant conditional certification before ruling on the instant motion, but this Court already held that it was more efficient and in the interest of judicial economy to consider the pending dispositive motions before considering a motion to conditionally certify the class. (ECF No. 35).

have the exclusive authority to resolve any and all disputes over the validity of any part of this agreement . . . .'").[2]

A delegation provision is an "agreement[] to arbitrate threshold issues concerning the arbitration agreement." *Danley v. Encore Capital Grp., Inc.*, 680 Fed. Appx. 394, 395-96 (6th Cir. 2017) (quoting *Rent-A-Centr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). Parties can agree to arbitrate "gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Centr.*, 561 U.S. at 68-69. In *Rent-A-Center*, the Supreme Court explained that such a delegation provision is "simply an additional, antecedent agreement that the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. Thus, a delegation provision is severable from the remainder of the contract, and "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate"—here, the delegation provision. *Id.* In other words, when there is a delegation provision, the Court will only intervene if the party seeking to avoid arbitration challenges the delegation provision itself. *Id.* at 71-72.

Centerfold argues that because there is a delegation provision in the Agreement, **any** challenge Ms. De Angelis asserts to the validity or enforceability of her consent to arbitrate must be submitted to the arbitrator. (ECF No. 15 at 11) (emphasis in original). The inclusion of a delegation provision, however, "does not mean that a federal court should automatically grant a motion to compel arbitration, because the party seeking to avoid arbitration may still raise defenses to the agreement to delegate." *Danley*, 680 F. App'x at 398. That is precisely what Ms. De Angelis has done. Unlike in the plaintiff in *Rent-A-Center* or *Danley*, Ms. De Angelis does assert specific

---

[2] Given the Court's discussion of lack of mutuality of obligation below, the Court need not decide whether the quoted language is a sufficiently definite delegation provision.

challenges to the delegation provision itself. As such, the Court must "resolve any issue that calls into question the formation or applicability of" the delegation provision, to satisfy itself that the "parties agreed to arbitrate" threshold issues. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297, 130 S. Ct. 2847, 2856, 177 L. Ed. 2d 567 (2010).

One challenge that Ms. De Angelis asserts that calls into question the formation of the delegation provision itself is that it lacks mutuality of obligation. (ECF No. 45 at 16) (Ms. De Angelis specifically attacks "any purported delegation clause" for lack of mutuality). In Ohio, "consideration is, of course, an element necessary for a binding contract." *Harmon v. Philip Morris Inc.*, 120 Ohio App. 3d 187, 190, 697 N.E.2d 270, 272 (1997). Consideration "requires mutuality of obligation." *Stanich v. Hissong Grp., Inc.*, No. 2:09-CV-0143, 2010 WL 3732129, at *5 (S.D. Ohio Sept. 20, 2010); *see also Raasch v. NCR Corp.,* 254 F.Supp.2d 847, 855 (S.D. Ohio 2003) (noting that mutuality of obligation "goes hand in hand with the concepts of consideration and illusory promise"). Absent "mutuality of obligation, a contract based on reciprocal promises lacks consideration." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315 (6th Cir. 2000). In other words, "a contract must be binding on both or else it is binding on neither." *Id.*

A promise is not binding if it is illusory. A promise is illusory when the promisor "retains the right to decide whether or not to perform the promised act." *Id.* Illusory promises do not creating binding obligations, and in such a case the contract lacks consideration. *See id.* When one party to an agreement retains the right to modify any term of the agreement at any time, its promises are illusory and the contract is therefore void and unenforceable for lack of consideration. *Day v. Fortune Hi-Tech Mktg., Inc.*, 536 F. App'x 600, 604 (6th Cir. 2013) (holding that "[b]ecause Defendant retained the ability to modify any term of the contract, at any time, its promises were

6

illusory" and therefore finding the entire contract, including the arbitration clause, void and unenforceable).

Courts "have consistently held that arbitration agreements fail to bind employees where the employer reserves the unilateral right to modify or cancel the terms of the deal at any time." *Stanich*, 2010 WL 3732129, at *5; *see also Floss*, 211 F.3d 306 at 315-16 (holding that arbitration contract lacked mutuality of obligation and accordingly did not constitute an enforceable arbitration agreement when agreement gave company the unlimited right to modify the arbitration rules without the employee's consent); *Stepp v. NCR Corp.*, 494 F. Supp. 2d 826, 834 (S.D. Ohio 2007) (finding that because company reserved the right to amend unilaterally the arbitration agreement, the contract lacked mutuality of obligation, and thus there was no consideration, and therefore no contract); *Trumbull v. Century Mktg. Corp.*, 12 F. Supp. 2d 683, 686 (N.D. Ohio 1998) (finding arbitration clause in employee handbook not enforceable because handbook purported to bind plaintiff by all of its terms "while defendant could simply revoke any term (including the arbitration clause) whenever it desired"); *Harmon v. Philip Morris Inc.*, 120 Ohio App. 3d 187, 191, 697 N.E.2d 270, 272 (1997) (finding no consideration when employer reserved the right to amend or terminate the arbitration program at any time).

Here, Ms. De Angelis argues that the Amendment Provision is an attempt to retain the ability to modify the agreement at any time, making Centerfold's promises illusory. (ECF No. 45 at 16). This Court agrees. The Amendment Provision reads:

> THE CLUB RESERVES THE RIGHT TO MODIFY, DELETE, OR ADD TO ANY OF THE CONDITIONS CONTAINED HEREIN WITHOUT NOTICE, AND RESERVES THE RIGHT TO CANCEL ENTERTAINER TENANT SPACE LEASE AT ANY TIME, WITH OR WITHOUT NOTICE OR CAUSE UPON BREACH OF THIS SPACE LEASE AGREEMENT OR SPACE LEASE USAGE TERMS.

(ECF No. 44 at 15). With this language, Centerfold reserved the right to modify or cancel the terms of the Agreement at any time without notice, and its promise was therefore illusory. An

illusory contract is not binding obligation, and the Agreement, including the delegation provision, thus lacks mutuality of obligation and consideration. As such, the delegation provision and the arbitration agreement are void and unenforceable. [3] *See Day*, 536 F. App'x at 604 (finding arbitration agreement and entire contract void and unenforceable because Defendant retained the ability to modify any of the contractual terms).

Centerfold relies on *Blakley v. UBS Fin. Servs. Inc.*, No. 1: 12-CV-30, 2013 WL 360378, at *7 (S.D. Ohio Jan. 30, 2013), *report and recommendation adopted,* No. C-1-12-30, 2013 WL 866470 (S.D. Ohio Mar. 7, 2013) to argue that the arbitration agreement is enforceable because the amendment provision appears in a separate section from the arbitration provision, and the duty of good faith and fair dealing prohibits them from actually amending the arbitration agreement. (ECF No. 47 at 11-12). In *Blakley*, the Magistrate Judge recommended finding that the clause giving the employer the right to modify the agreement did not make the arbitration agreement unenforceable. *Blakley* is distinguishable, however, because there the employer was required to provide notice of any changes by posting them on its internal intranet. 2013 WL 864470, at *7 ("[T]he amendment provision of the FMCP does not make the arbitration provision unenforceable as defendant is required to provide notice by posting any changes on its internal intranet."); *see also Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 667–68 (6th Cir. 2003) (concluding that arbitration agreement was supported by sufficient consideration and mutuality of obligation when amendment provision gave the employer the authority to alter the agreement on only one day of each year and required them to provide its employees with thirty days' notice before doing so).

The *Blakley* court acknowledged that *advanced* notice, rather than just notice, was required in *Morrison*, but found that the lack of advanced notice in the agreement did not make the

---

[3] As a result of this finding, the remainder of the parties' arguments need not be addressed.

arbitration agreement unenforceable because the amendment provision was not specific to the arbitration provision and was instead contained in a different section. 2013 WL 864470, at *7. As an initial note, the Amendment Provision at issue here requires no notice, so whether mere notice is sufficient or notice must be given in advance is neither relevant nor decided here. Additionally, this Court disagrees that the location of the Amendment Provision is relevant to whether such a provision makes the employers' promise illusory under Ohio law. In *Stanich*, this Court held that an amendment provision on the first page of an employee handbook rendered the employer's promise illusory and the entire contract, including the arbitration provision, unenforceable under Ohio law. 2010 WL 3732129, at *6. The Northern District of Ohio came to the same result in *Trumbell*, invalidating an arbitration agreement contained in an employee handbook because the handbook's introduction contained an amendment provision. 12 F. Supp. 2d at 686. The Sixth Circuit reached the same conclusion in a similar case under Kentucky law, finding that an amendment provision in a contract rendered the entire contract, including the arbitration provision contained in a different section, void and unenforceable. *Day*, 536 Fed. Appx. at 604. The Court therefore rejects Centerfold's argument that because the amendment provision appears in a separate section as the arbitration provision, the arbitration clause should not be invalidated and finds *Blakley* unpersuasive.[4]

### III. CONCLUSION

For the reasons set forth above, the Court finds that the Amendment Provision in the Agreement renders Centerfold's promise to arbitrate (including the promise to arbitrate threshold issues) illusory, and no mutuality of obligation exists, rendering the Agreement void and

---

[4] The Court therefore declines to follow *Blakley*'s finding that the duty of good faith and fair dealing can save an agreement from the dangers of an illusory promise. The cited precedent indicates otherwise.

unenforceable for lack of consideration.  Defendants' Motion to Dismiss or Stay and Motion to Compel Arbitration (ECF No. 15) is therefore **DENIED.**

  **IT IS SO ORDERED.**

              <u> s/Algenon L. Marbley </u>
              **ALGENON L. MARBLEY**
              **United States District Court Judge**

**DATED: September 24, 2018**