IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **STEPHANIE DE ANGELIS,** | : | |
| Plaintiff, | : | |
| | : | Case No. 2:17-CV-924 |
| v. | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| **NATIONAL ENTERTAINMENT GROUP LLC.,** | : | |
| | : | Magistrate Judge Deavers |
| Defendant. | : | |
| **STEPHANIE DE ANGELIS,** | : | |
| Plaintiff, | : | |
| | : | Case No. 2:17-CV-926 |
| v. | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| **NOLAN ENTERPRISES, INC.,** | : | |
| | : | Magistrate Judge Deavers |
| Defendant. | : | |
| **STEPHANIE DE ANGELIS,** | : | |
| Plaintiff, | : | |
| | : | Case No. 2:17-CV-927 |
| v. | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| **ICON ENTERTAINMENT GROUP INC.,** *et al.*, | : | |
| | : | Magistrate Judge Deavers |
| Defendants. | : | |
| **DOE 1,** et al., | : | |
| Plaintiffs, | : | |
| | : | Case No. 2:18-CV-443 |
| v. | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| **VM3015, Inc.,** *et al.*, | : | |
| | : | Magistrate Judge Deavers |
| Defendants. | : | |

## OPINION & ORDER

This matter is before the Court on Plaintiffs' Motions to Consolidate the four above-captioned related cases. (2:17-cv-924, ECF No. 26; 2:17-cv-926, ECF No. 37; 2:17-cv-927, ECF No. 26; 2:18-cv-443, ECF No. 67). Defendants in each case have opposed the motions. Defendant Nolan Enterprises, Inc. has filed a Motion for Leave to File Sur-Reply. (2:17-cv-926, ECF No. 50). Plaintiffs have also filed a Motion to Appoint Interim Lead Class Counsel & Implement Procedures to Establish a Defendant Steering Committee. (2:18-cv-443, ECF No. 7). Defendants have also opposed that Motion. For the reasons stated below, Plaintiffs' Motions are **DENIED.** Defendant Nolan Enterprises, Inc.'s Motion for Leave to File Sur-Reply is also **DENIED.**

### I. BACKGROUND

Defendants are gentlemen's clubs across the state of Ohio. Plaintiff Stephanie De Angelis was a dancer at several of these clubs. She sued the clubs and related parties alleging violations of the Fair Labor Standards Act of 1983 ("FLSA"), 29 U.S.C. §§ 201, et seq., the Ohio Minimum Fair Wage Standards Act ("OMFSWA"), O.R.C. §§ 4111.01, et seq., the Ohio Semi-Monthly Payment Act, O.R.C. § 4113.15, and common law unjust enrichment. She alleges that the gentlemen's clubs failed to pay its dancers any wages and wrongly misclassified dancers as independent contractors instead of employees. She filed suits against National Entertainment Group, LLC, 2:17-cv-924 ("*National* litigation"), Nolan Enterprises, Inc., 2:17-cv-926 ("*Nolan* litigation"), and ICON Entertainment Group, Inc., et al., 2:17-cv-927 ("*ICON* litigation") in 2017.

On May 6, 2018, three Jane Does ("VM3015 Plaintiffs") filed suit against twenty-four additional gentlemen's clubs as well as the Buckeye Association of Club Executives, Inc. ("BACE"), and John Doe BACE member gentlemen's clubs 1–20 in *Doe 1 et al. v. VM3015,*

*Inc. et al.*, 2:18-cv-443 ("*VM3015* litigation"). (2:18-cv-443, ECF No. 1). "BACE Ohio is a lobbying group for gentlemen's clubs. (*Id.* at 18). The *VM3015* Plaintiffs later amended their complaint on May 17, 2018, substituting some clubs, naming additional clubs as Defendants, and expounding upon their previous claims. (ECF No. 6). Like Ms. De Angelis, the *VM3015* Plaintiffs alleged violations of the Fair Labor Standards Act of 1983 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act ("OMFSWA"), O.R.C. §§ 4111.01, *et seq.*, the Ohio Semi-Monthly Payment Act, O.R.C. § 4113.15, and common law unjust enrichment.

The *VM3015* Plaintiffs' case differed from Ms. De Angelis's in that the *VM3015* Plaintiffs alleged that the clubs and BACE engaged in a statewide conspiracy in violation of Section 1 of the Sherman Act, 1 U.S.C. § 1, the Ohio Valentine Act, O.R.C. § 1331.01, *et seq.*, and Ohio common law civil conspiracy. (ECF No. 6 at 8). The *VM3015* Plaintiffs alleged that the gentlemen's clubs and BACE conspired to require dancers to sign lease agreements that defined the dancers' relationship with the gentlemen's clubs as one of tenants leasing performance space in the clubs ("the Tenant System") rather than as employees—in other words, a conspiracy to commit the underlying conduct of which Ms. De Angelis complained. (ECF No. 6 at 9). Through this alleged conspiracy, the gentlemen's clubs avoided paying their dancers any wages. (ECF No. 6 at 18).

On May 30, 2018, Ms. De Angelis moved to consolidate each of her three cases with the *VM3015* litigation. In addition, the VM3015 Plaintiffs filed a Motion to Consolidate with Ms. De Angelis's three cases on June 13, 2018 along with a Motion for Leave to File a Second Amended Complaint. (2:18-cv-443, ECF No. 67). The proposed Second Amended Complaint includes the Defendants in Ms. De Angelis's cases.

3

The *VM3015* Plaintiffs also filed a Motion to Appoint Interim Lead Class Counsel and Implement Procedures to Establish a Defendant Steering Committee. (2:18-cv-443, ECF No. 7). The *VM3015* Plaintiffs' Motion raised the issue of possible coordination or consolidation with the earliest related case pending before this Court, *Hogan v. Cleveland Ave. Restaurant, Inc. et al.*, Case No. 2:15-cv-2883 ("*Hogan* litigation"). That case alleged essentially the same facts against named Defendant Cleveland Ave. Restaurant, Inc. d/b/a Sirens, "BACE (including OC), and the BACE-member adult entertainment clubs throughout Ohio." (2:15-cv-2883, ECF No. 74 at 15–16).

The pending Motions have been fully briefed and are ripe for review.

## II. LAW & ANALYSIS

### A. Defendant Nolan Enterprises, Inc.'s Motion for Leave to File Sur-Reply

Defendant Nolan Enterprises, Inc. ("Nolan") filed a motion for leave to file sur-reply (2:17-cv-926, ECF No. 50) to Ms. De Angelis's Motion to Consolidate (2:17-cv-926, ECF No. 37). Nolan asserts that this sur-reply is necessary to address new "arguments not found in Plaintiff's original motion to the Court" and Plaintiff's "fail[ure] to note controlling legal authority." (ECF No. 50 at 1). Ms. De Angelis has responded that Nolan has not shown good cause to file a sur-reply as required under Local Rule 7.2(a)(2). She alleges that she has not raised new facts in her Reply and that Nolan is instead "attempting to take another bite of the apple." (ECF No. 53 at 2).

The Local Rules for the Southern District of Ohio provide for memoranda in opposition and replies to such memoranda. The Local Rules also prohibit "additional memoranda beyond those enumerated . . . except upon leave of court for good cause shown." S.D. Ohio Civ. R.

7.2(a)(2). As this Court previously noted in *Streeter v. Adaptasoft, Inc.*, No. 2:17-cv-01125, 2018 U.S. Dist. LEXIS 143247, at *7 (S.D. Ohio Aug. 23, 2018) (Marbley, J)

> While the Court's Local Civil Rules do not define good cause, "this Court has consistently held that in order for a party to be given permission to file a sur-reply, the reply brief must raise new grounds that were not presented as part of the movant's initial motion." *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07-cv-1190, 2010 U.S. Dist. LEXIS 114665, 2010 WL 4117552, at *4 (S.D. Ohio Oct. 19, 2010) (citations omitted). The Local Civil Rules also provide that "[e]vidence used to support a reply memorandum shall be limited to that needed to rebut the positions argued in memoranda in opposition." S.D. Ohio Civ. R. 7.2(d).

Defendant Nolan has alleged that Plaintiff's Reply raises new arguments from those she included in her Motion to Consolidate. Upon this Court's review of Ms. De Angelis's Reply, it is unclear what new arguments Defendant could be referring to, other than the rebuttal arguments necessary to address the Defendant's Response. Nolan's Response to the Motion to Consolidate argued, among other things: (1) that the arbitration agreements barred Ms. De Angelis's action; (2) that Nolan would be prejudiced by consolidating the suits; and (3) that the cases were too factually distinct for consolidation. Ms. De Angelis made three arguments in her Reply: (1) that the arbitration agreement would not bar her ability to bring suit against the Defendants; (2) that consolidation would not prejudice the Defendants (and in fact that the Defendants would be prejudiced by maintaining two separate suits); and (3) that the separate suits all contain common questions of law or fact. These were in direct response to Nolan's arguments.

Ms. De Angelis's Reply does raise the presence of other opt-in plaintiffs who allegedly have not signed arbitration agreements. Nolan's proposed Sur-Reply focuses almost exclusively on Nolan's objection to the anonymity of the plaintiffs—both those who have filed consents to sue in Ms. De Angelis's case against Nolan and those "Jane Does" maintaining the suit against VM3015 in the *VM3015* litigation. If this is the supposed "new argument" that Nolan alleges

5

Ms. De Angelis has raised, then Nolan's argument is particularly unconvincing. Although Ms. De Angelis's Motion to Consolidate was brief and did not mention these other currently-anonymous plaintiffs, Nolan knew about the Jane Doe plaintiffs in both cases, and specifically addressed their presence in Nolan's Response. (ECF No. 46 at 6). If Nolan had wanted to argue further on the permissibility of such currently anonymous plaintiffs, it could have done so. In fact, the entire content of Nolan's proposed sur-reply could have been filed in its initial Response without raising any questions as to its relevance there. Thus, Defendant's Motion for Leave to File Sur-Reply is **DENIED** and the sur-reply brief is **STRICKEN**.

### B. Motions to Consolidate

Plaintiffs seek to consolidate the *National* litigation, the *Nolan* litigation, the *ICON* litigation, and the *VM3015* litigation. But any discussion of consolidation would be incomplete without considering the *Hogan* litigation, a related case alleging the same statewide conspiracy as the *VM3015* litigation but in which no motion to consolidate is pending. Steven Babin, Jr. represents Plaintiffs in the *National*, *Nolan*, *ICON*, and *VM3015* litigation while Andrew Biller and co-counsel represent Plaintiffs in the *Hogan* litigation. The broader question before this Court, therefore, is how best to manage these suits, all of which allege similar and, in some instances, overlapping claims but with different named Plaintiffs represented by different counsel.

Courts have "the inherent power to manage [their] docket[s]." *In re Prevot*, 59 F.3d 556, 566 (6th Cir. 1995). Courts can sua sponte consolidate cases, *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993). Courts also have discretion to exercise the first-to-file rule. The first-to-file rule ordinarily applies to two duplicative cases filed in different courts. But, separately from the first-to-file rule, several circuits have enunciated the principle that "plaintiffs

have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Twaddle v. Diem*, 200 F. App'x 435, 438 (6th Cir. 2006) (unpublished) (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133 138 – 39 (2d Cir. 2000)). Courts may also dismiss duplicative claims in the same case. *See, e.g.*, *Borden v. Antonelli College*, 304 F.Supp.3d 678, 691 (S.D. Ohio 2018) (issuing sua sponte order to show cause as to why a duplicative claim should not be dismissed). Therefore, this Court has a variety of tools at its disposal for managing these cases as efficiently and effectively as possible.

Although not raised by the parties, this Court finds it appropriate to address the overlapping claims in the *VM3015* litigation and the *Hogan* litigation. The *Hogan* litigation was filed on October 6, 2015. (2:15-cv-2883, ECF No. 1). The *Hogan* Plaintiffs amended their Complaint on May 19, 2017. (2:15-cv-2883, ECF No. 74). In their First Amended Complaint, the *Hogan* Plaintiffs alleged a collective action on behalf of individuals who worked at Sirens (a gentleman's club) "from October 6, 2012 to the present, whose exclusive, primary or secondary job function was exotic dancing, and who were not paid at least regular minimum wage for all hours worked." (*Id*. at 12). They also proposed a class action for the same type of workers but applied to those who worked at Sirens "within the past six years." (*Id.* at 13). These claims were included in the initial complaint and are not at issue here. The First Amended Complaint *added* claims for a statewide class action and statewide collective action. The proposed Statewide Class was defined as follows:

> All persons who performed exotic dancing at any BACE-member adult entertainment club in Ohio within the past six years while subject to the Lease Agreement, the Tenant System, or any similar ruleset.

(*Id.* at 16). Plaintiffs defined the collective action in the same way except limited to the time period "from October 6, 2012 to the present." (*Id.* at 20). These statewide class and collective

actions alleged a conspiracy between "[t]he Sirens Defendants, BACE (including OC), and BACE-member adult entertainment clubs throughout Ohio . . . to deny exotic dancers . . . minimum wages" and instead charge them "rent" under the tenant system. (*Id.* at 24). They brought these claims under both state and federal law. For these violations, the *Hogan* Plaintiffs pleaded damages including a return of the rent payments and backpay for minimum wages, fees, and costs. (*Id.* at 24–28).

The *VM3015* litigation was filed on May 6, 2018, almost a full year after the First Amended Complaint in the *Hogan* litigation. (2:18-cv-443, ECF No. 1). The *VM3015* Plaintiffs filed a First Amended Complaint on May 17, 2018. (2:18-cv-443, ECF No. 6). The *VM3015* Plaintiffs proposed several class and collective actions against individual clubs for state and federal wage and hour violations. They also brought claims on behalf of a statewide class for a conspiracy. They defined the class as follows:

> All current and former Dancers employed by Defendants, or any other BACE-member club, within the six years before this Complaint was filed up to the present.

(2:18-cv-443, ECF No. 6). They requested essentially the same relief as the *Hogan* Plaintiffs. The *VM3015* Plaintiffs have requested leave to file a Second Amended Complaint. This proposed Second Amended Complaint purports to add Defendants and a claim that the statewide Defendants conspired to "blacklist" dancers. (2:18-cv-443, ECF No. 67-1 at 87). Such blacklisting allegations are included in the *Hogan* First Amended Complaint. (2:15-cv-2883, ECF No. 74 at 24–25).

Cases are duplicative if the issues "have such an identity that a determination in one

8

action leaves little or nothing to be determined in the other."[1] *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997) (internal quotations and citations omitted). When cases are duplicative, "a court . . . will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co*, 342 U.S. 180, 186 (1952)). Here, the *VM3015* Plaintiffs have alleged the same claims on behalf of the same plaintiff class/collective action and against the same Defendant class as the *Hogan* Plaintiffs. The *VM3015* Plaintiffs' claims are therefore encompassed entirely within the *Hogan* litigation. Therefore, this Court will consider staying, dismissing, or enjoining the *VM3015* litigation or consolidating the *VM3015* litigation with the *Hogan* litigation.

As consolidation would be best suited to the ends of judicial efficiency, this Court starts its analysis there. Cases may be consolidated if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). In determining whether cases should be consolidated, this Court must consider:

> Whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993). Whether to consolidate is a decision that this Court "ma[kes] thoughtfully, with specific reference to the factors identified above." *Id.* Especially important is to ensure "that consolidation does not result in unavoidable prejudice or unfair advantage." *Id.* While "[c]onsolidation of judicial resources is a laudable

---

[1] Although the Sixth Circuit discussed this standard in the context of the first-to-file rule, both the first-to-file rule and the Court's discretion to dismiss duplicative suits require a determination of when a suit is, in fact, a duplicate. Thus, this Court finds the Sixth Circuit's discussion of the first-to-file rule in *Smith* to be informative.

9

goal[,] . . . . if the savings to the judicial system are slight, the risk of prejudice to a party must be viewed with even greater scrutiny. *Id.*

The *Hogan* Plaintiffs filed a Response as Non-Parties to the *VM3015* Plaintiffs' Motion to Appoint Interim Lead Class Counsel and Implement Procedures to Establish a Defendant Steering Committee. (2:18-cv-443, ECF No. 19). In that Motion, the *Hogan* Plaintiffs stated their opposition to consolidation of the *Hogan* and *VM3015* cases. The *Hogan* Plaintiffs argue that their case is farther along than the *VM3015* Plaintiffs' case. The *Hogan* Plaintiffs have attempted mediation with BACE/OC (*Id.* at 3); the Court has denied BACE/OC's Motion to Dismiss; and discovery is underway in *Hogan*. (*Id.* at 4). Since the time that the *Hogan* Plaintiffs filed their Response as Non-Parties, they have participated in settlement talks with the Defendants.

Courts routinely decline to consolidate cases that are at "different stages of litigation." *Roxane Labs., Inc. v. Abbott Labs.*, Nos. 2:12-cv-312, 2:13-cv-645, 2:13-cv-708, 2013 U.S. Dist. LEXIS 132784, at *13 (S.D. Ohio Sept. 16, 2013) (King, MJ). *See also Linihan v. Food Concepts Int'l, LP*, Nos. 2:15-CV-2476, 2:15-CV-2473, 2016 U.S. Dist. LEXIS 23813, at *5 (S.D. Ohio Feb. 26, 2016) (Marbley, J). Here, the *Hogan* litigation is sufficiently farther advanced than the *VM3015* litigation to make consolidation inappropriate.

Despite the inappropriateness of consolidation, "litigating two petitions that challenge [the same conduct] within the same district and division would be an inefficient use of judicial resources and the parties' resources." *Kelly v. Phillips*, 2018 U.S. Dist. LEXIS 56746, at *3 (M.D. Tenn. Apr. 3, 2018). The *Hogan* Plaintiffs and *VM3015* Plaintiffs allege the same claims against the same defendants. The resolution of class and collective action certification in *Hogan* could be binding on the *VM3015* Plaintiffs' class and collective action claims against the BACE

Defendants. Dismissal here, however, would be premature because the *Hogan* class and collective actions have yet to be certified. This Court therefore finds that staying the conspiracy claims is more appropriate than dismissing them. Therefore, this Court hereby **STAYS** briefing on the conspiracy allegations in the *VM3015* litigation pending resolution of class and collective action certification in the *Hogan* litigation.

The *VM3015* Plaintiffs have also brought claims on behalf of several class and collective actions against individual Defendant gentlemen's clubs. It is too early to tell whether these claims are encompassed by the *Hogan* litigation because the membership in BACE/OC is yet to be determined. Therefore, while not consolidated with the *Hogan* litigation, counsel are hereby **ORDERED** to coordinate discovery efforts between *Hogan* and *VM3015*. If the classes represented by the *VM3015* Plaintiffs are not included in the *Hogan* allegations, such class and collective actions may proceed under the *VM3015* heading.

Ms. De Angelis seeks to consolidate the *National* litigation, the *Nolan* litigation, the *ICON* litigation, and the *VM3015* litigation. Ms. De Angelis has offered little in the way of justification of this except to say that the *VM3015* litigation includes conspiracy claims against the *National*, *Nolan*, and *ICON* Defendants. The *VM3015* litigation also includes claims about insufficient wages under the FLSA. Ms. De Angelis also contends that "[e]ach club maintained nearly identical illegal policies." (2:17-cv-924, ECF No. 26 at 2; 2:17-cv-926, ECF No. 37 at 2; 2:17-cv-927, ECF No. 26 at 2; 2:18-cv-443, ECF No. 67 at 4).

This Court has already ordered the parties in the *ICON* litigation to arbitration. Therefore, that case cannot be consolidated with any of the other cases. The *Nolan* Defendants have asserted that their arbitration agreement with Ms. De Angelis prohibits consolidation, but

this Court invalidated the parties' agreement to arbitrate and denied the *Nolan* Defendants' Motion to Compel Arbitration in its September 24, 2018 Order. (2:17-cv-926, ECF No. 55).

The *National*, *Nolan*, and *VM3015* Defendants raise similar objections to consolidation. They argue that whether an individual plaintiff is an independent contractor or an employee is too fact intensive to allow for consolidation. Defendants in the *National* litigation additionally argue that National is not a named Defendant in the *VM3015* litigation nor is it a member of BACE. (2:17-cv-924, ECF No. 28 at 1). The *National* Defendants have cited increased costs from defending a larger consolidated case than the individual case (*Id.* at 4–5), and the *Nolan* Defendants have argued that they will be required to abide by broad rulings unrelated to their own conduct (2:17-cv-926, ECF No. 46 at 9).

Plaintiff has replied that the claims arise from the same facts because the *VM3015* Plaintiffs allege a conspiracy and has argued that Defendants would be better served by defending one consolidated case rather than two cases.

Because the *VM3015* Plaintiffs' conspiracy claims are stayed, reliance on these conspiracy claims as the basis for consolidation would be misplaced. This Court therefore considers consolidation based on the claims for wage and hour violations against the individual clubs. Cases must share a common question of law or fact before a court can consolidate the actions. Fed. R. Civ. P. 42(a)(2). Legal and factual issues need not be completely identical. *J4 Promotions, Inc. v. Splash Dogs, LLC*, Nos. 2:09-cv-136, 2:10-cv-432, 2010 U.S. Dist. LEXIS 87844, 2010 WL 3063217, at *1 (S.D. Ohio Aug. 3, 2010). Courts have "discretion to consolidate as long as there are *some* common questions of law or fact." *Guild Assocs., Inc. v. Bio-Energy (Washington), LLC*, 309 F.R.D. 436, 440 (S.D. Ohio 2015) (Marbley, J).

Plaintiffs' claims share a common question of law.  The *VM3015* Plaintiffs and Ms. De Angelis base their claims against the individual clubs on the same provisions of state and federal law.  Plaintiffs have alleged operating procedures that are largely the same—classifying dancers as independent contractors who lease space from the clubs—but the exact details of how such systems were implemented varies.  It is too early to tell whether these variations will be significant.  Plaintiffs had the burden of showing such commonality that the suits should be combined.  *See Penley v. NPC Int'l, Inc.*, No. 13-1031, 2014 WL 12634409, at *2 (W.D. Tenn. Mar. 26, 2014).  Plaintiffs have not shown such commonality, particularly since the conspiracy claims have been stayed.

Because the *National*, *Nolan*, and *VM3015* cases are pending before the same judge, they need not be consolidated to proceed in an efficient manner.  As this Court has found before, "[t]he Court can . . . coordinate discovery and minimize the risk and burden of duplicative discovery even without consolidation."  *Roxane Labs., Inc.*, 2013 U.S. Dist. LEXIS 132784, at *12 (King, MJ).  These cases "pending before the same judicial officers also minimizes the risk of inconsistent results and lessens the burden on the Court." *Id.*  Therefore, even if Plaintiffs had carried their burden of showing common questions of law or fact, the efficiency interests in consolidation are low.  Additionally, the number of parties in this case coupled with the number of defendants and the slightly different procedures those defendants followed at their places of business could make the case confusing for a jury.  Therefore, Plaintiffs' Motion to Consolidate the *VM3015* litigation with the *National* and *Nolan* litigation is hereby **DENIED.**  The Court will entertain renewed motions to consolidate if the cases, going forward, prove to be similar enough to warrant a consolidated jury trial.

The *VM3015* Plaintiffs have also moved to file a Second Amended Complaint. (ECF No. 67). This proposed Second Amended Complaint was based on the Court's having consolidated all cases for all purposes. Given the heavy reliance on claims of a joint conspiracy, which this Court has stayed, Plaintiffs' Motion to file Second Amended Complaint is hereby **DENIED.**

### C. Motion to Appoint Interim Lead Class Counsel and Implement Procedures to Establish Defendant Steering Committee

The *VM3015* Plaintiffs moved to appoint interim lead class counsel and to implement procedures to establish Defendant steering committee. (2:18-cv-443, ECF No. 7). The *VM3015* Plaintiffs argue that this is in the interests of judicial efficiency. Several Defendants have opposed. They have argued that no class has been certified and that the Defendant class has not been fully identified. As Defendants Sharkey's Lounge and The Living Room have identified, appointing a Defendant steering committee "when the nature of the claims and defenses involved is uncertain unfairly prejudices Defendants as it does not afford them an opportunity to fairly assess the case or to determine how they wish to proceed on these issues." (2:18-cv-443, ECF No. 108 at 3).

This Court has now stayed the *VM3015* Plaintiffs' conspiracy allegations. Therefore, there is no need to appoint an interim lead class counsel. Plaintiffs' Motion for Interim Lead Class Counsel is hereby **DENIED**.

The claims going forward are the class and collective action claims against the individual Defendant clubs. These claims may ultimately end up precluded by the *Hogan* litigation. At this stage of the litigation, when it is unclear what defenses each Defendant will raise, and having denied any consolidation, establishing a Defendant Steering Committee would be premature and would not further efficiency. Plaintiffs' Motion to Implement Procedures to Establish a Defendant Steering Committee is hereby **DENIED**.

### III. CONCLUSION

For the foregoing reasons, the Court rules as follows:

- Defendant Nolan Enterprises, Inc.'s Motion for Leave to File Sur-Reply (2:17-cv-926, ECF No. 50) is **DENIED.**
- Ms. De Angelis's Motion to Appoint Interim Lead Class Counsel & Implement Procedures to Establish a Defendant Steering Committee (2:18-cv-443, ECF No. 7) is **DENIED.**
- Plaintiffs' Motions to Consolidate (2:17-cv-924, ECF No. 26; 2:17-cv-926, ECF No. 37; 2:17-cv-927, ECF No. 26; 2:18-cv-443, ECF No. 67) are **DENIED.**
- The parties are hereby **ORDERED** to coordinate discovery in the *Hogan* and *VM3015* cases.
- Briefing on the conspiracy allegations in the *VM3015* case is hereby **STAYED.**
- The *VM3015* Plaintiffs' Motion to File Second Amended Complaint (2:18-cv-443 ECF No. 67) is **DENIED.**

Having addressed the Motions to Consolidate, the Court hereby **LIFTS THE STAY** of the motions to amend in cases 2:17-cv-924 and 2:17-cv-926.

**IT IS SO ORDERED.**

    <u>s/Algenon L. Marbley</u>
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATED: March 4, 2019**